1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11 | TRISTIN D. KING,                    | Case No.:  20-CV-1254 JLS (AHG)
   | CDCR #AW-9524                       |
12 |                                     | **ORDER GRANTING DEFENDANTS'**
   |                   Plaintiff,        | **MOTION FOR SUMMARY**
13 |                                     | **JUDGMENT**
   | v.                                  |
14 |                                     |
   | C/O FIERRO, Correctional Officer; and |
15 | C/O WOLLESEN, Correctional Officer, |
16 |                                     |
   |                   Defendants.       |
17

18

19      Plaintiff Tristin D. King, a state prisoner incarcerated at the R.J. Donovan

20 Correctional Facility ("RJD") in San Diego, California, at the time of the events but since

21 released from custody, is proceeding *pro se* and *in forma pauperis* with a civil rights

22 Complaint pursuant to 42 U.S.C. § 1983.  ECF No. 1.  Plaintiff claims Defendants RJD

23 Correctional Officers C. Fierro and J. Wollesen failed to protect him from assault by

24 another inmate in violation of the Eighth Amendment.  *See id*.

25      Currently pending is Defendants' Motion for Summary Judgment.  ECF No. 29.

26 They contend Plaintiff has failed to exhaust available administrative remedies and the

27 uncontroverted evidence establishes they were unaware he faced a risk of assault.  *See id*.

28 No opposition has been filed.

For the following reasons, the Court **GRANTS** the Motion for Summary Judgment and enters judgment in favor of Defendants.[1]

## I.     Procedural Background

Plaintiff initiated this action by filing a Complaint on July 2, 2020, naming RJD Correctional Officers Fierro and Wollesen as Defendants.  ECF No. 1.  On August 19, 2020, the Court granted Plaintiff leave to proceed *in forma pauperis*, directed the Clerk of Court to issue a summons for each Defendant, and ordered the United States Marshal to serve each Defendant.  ECF No. 5.

Defendants filed an Answer on August 30, 2021, and filed the instant Motion for Summary Judgment on July 18, 2022.  ECF Nos. 22, 29.  Plaintiff's Opposition was initially due August 18, 2022.  ECF No. 30.

On August 25, 2022, the Court *sua sponte* extended the time for Plaintiff to file an opposition to September 19, 2022.  ECF No. 31.  That order was returned to the Court as undeliverable.  ECF No. 33.  On October 7, 2022, the Court issued an Order to Show Cause why the case should not be dismissed for failure to prosecute.  ECF No. 36.  On November 8, 2022, Plaintiff notified the Court of a change of address and requested copies of Court documents.  ECF No. 41.  On November 8, 2022, the Court extended the opposition deadline to December 16, 2022, and directed the Clerk of Court to send Plaintiff copies of the Order to Show Cause and the Defendants' Motion for Summary Judgment.  ECF No. 42.  Plaintiff has not filed an opposition or otherwise responded.

## II.    Plaintiff's Allegations

Plaintiff alleges that at approximately 7:10 p.m. on December 4, 2019, while housed in the RJD Enhanced Outpatient Program, he exited his cell to participate in the evening dayroom program.  ECF No. 1 at 3.  He was approached by RJD Correctional Officer Ogle who informed him he needed to sign for legal mail and accompanied him to the dayroom.

---

[1] Although this motion was referred to United States Magistrate Judge Allison H. Goddard pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument is necessary for the disposition of this matter.  *See* S.D. Cal. CivLR 72.1(d).

*Id*.  Inmate Carr exited his cell and followed them.  *Id*.  Plaintiff was signing for his mail in the presence of Officer Ogle and Defendants RJD Correctional Officers Fierro and Wollesen when Inmate Carr whispered something unintelligible in Plaintiff's ear from behind.  *Id*. at 4.  When Plaintiff turned around to ask Inmate Carr what he said, Inmate Carr allegedly punched Plaintiff in the face.  *Id*.  Defendants Fierro and Wollesen just "stood there; not sounding any emergency alarm or reacting in any way," according to Plaintiff.  *Id*.  After five seconds Plaintiff looked at the officers and asked "really?"  *Id*. Officer Ogle then told Inmate Carr to "just walk away, man," which Carr did.  *Id*.  Plaintiff then said to Defendant Wollesen: "Really?, you're just gonna let that man punch me in my face?"  *Id*. at 5.  Officer Ogle handcuffed and escorted Inmate Carr out of the building.  *Id*. Plaintiff alleges Defendant Wollesen "laughed and stated, 'Carr's just crazy, man,'" which "made the plaintiff feel humiliated, embarrassed, devalued, and afraid of exactly how the officers conducted their duties in the building."  *Id*.  Inmate Carr was returned to his cell, but neither he nor Plaintiff were interviewed or asked to sign a document that evening agreeing they could cohabit peacefully as required by prison regulations.  *Id*.

When Plaintiff exited his cell for breakfast the next morning, Inmate Carr, "who was waiting on a blind spot on the side of the sally-port exit, ran towards the plaintiff and began punching the plaintiff in the face and torso."  *Id*. at 5–6.  When Plaintiff put his hands up to protect his face from a "barrage of punches," his left hand "was damaged very badly from the impact, and still is, with limited mobility."  *Id*. at 6.  Plaintiff immediately returned to his cell and filled out a 602-inmate grievance, a copy of which is attached to the Complaint.  *Id*. at 22–26.  He stated in the grievance that the Defendants "should have separated me from my attacker but instead jeopardized my safety by allowing him to stay in the building and attack me," and requested "compensation for injuries and reprimanding officers for jeopardizing safety."  *Id*.

Plaintiff alleges that Defendants Fierro and Wollesen were again on duty in the dayroom that evening, December 5, 2019, and Wollesen allegedly "smiled and said jokingly to plaintiff, 'how's your jaw?'"  *Id*. at 7.  Plaintiff told Wollesen that because

Wollesen had failed to separate Plaintiff and Inmate Carr the previous evening, Inmate Carr had attacked Plaintiff again. *Id*. According to Plaintiff, Wollesen asked Plaintiff if he had "fought back 'this time?'" *Id*.

Plaintiff states that about a week later he was summoned to the program office to be interviewed about the December 4, 2019, incident. *Id*. at 7–8. He told the interviewing officer "how the on duty officers witnessed the attack and failed to properly respond to the attack, which led to another attack the morning of December 5." *Id*. at 8. Plaintiff was asked if anyone witnessed the attack, and he told the interviewing officer that Inmate Alexander was a witness willing to make a statement. *Id*. Inmate Alexander was summoned that same night to be interviewed about the December 4 incident, and he told Plaintiff "he had been interviewed about the attack, where he explained what he'd witnessed; inmate Carr walk up to plaintiff and punch him." *Id*.

On "December 24, 2019, plaintiff received a 'Staff Complaint Response - Appeal #RJD-B-19-07660' ('Appeal Response') regarding the 602 on the attack of December 4th and 5th." *Id*. A copy is attached to the Complaint. *Id*. at 20–21. It does not mention Plaintiff's request for monetary compensation and states that the matter was referred to the hiring authority to determine whether the evidence warrants an investigation. *Id*. at 9. It also states that the request for Defendants to be reprimanded was "beyond the scope of the staff complaint process" and "allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process." *Id*. Plaintiff alleges he did not understand what "further relief" he could possibly seek, and contends the appeal response constituted an attempt to confuse, discourage, and obstruct his attempt to exhaust his administrative remedies. *Id*. at 9–10.

## III. Defendants Are Entitled to Summary Judgment

Defendants move for summary judgment for two reasons. First, they contend Plaintiff received a second level response to his 602-inmate grievance but never appealed to the third and final level of appeal as required to exhaust administrative remedies, even though that course of action was available to him. ECF No. 29-1 at 12–14. They argue

Plaintiff cannot groundlessly plead confusion arising from the second level response as a reason for not proceeding to the final level because the second level response clearly stated he was required to appeal to the final level in order to exhaust administrative remedies. Moreover, Plaintiff has properly exhausted four prior inmate grievances. *Id.*

Defendants argue in the alternative that they are entitled to summary judgment on Plaintiff's Eighth Amendment failure to protect claim because, even if Plaintiff's allegations are true, he has failed to demonstrate that Defendants had a sufficiently culpable state of mind. *Id.* at 15–17. They argue that neither the allegations in the Complaint, nor the uncontroverted evidence, support a finding that they had any advance notice Inmate Carr would attack Plaintiff on the first occasion, and since they were not the first correctional officers to respond to that first attack, they did not have a responsibility to sound an alarm or investigate whether the two inmates presented a further danger to each other. *Id.* As to the second attack, they contend that Plaintiff: (1) did not complain to anyone that he feared for his safety after the first attack; (2) did not report the second attack, but merely returned to his cell to prepare a 602-inmate grievance seeking compensation for the attack and requesting that Defendants be disciplined; (3) has presented no evidence that the second attack even occurred; and (4) has come forward with no evidence to contradict Defendants' evidence that Plaintiff and Inmate Carr were interviewed about two weeks later about any mutual hostility, and both inmates signed a memorandum stating they did not consider each other enemies and could remain housed together without further incident. *Id.*

For the following reasons, the Court finds summary judgment is appropriate based on both of Defendants' contentions.

### A.   Legal Standards

A defendant is entitled to summary judgment if they show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing summary judgment is proper by "showing the absence of a genuine issue as to any material fact." *Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 157 (1970).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

To avoid summary judgment, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The Court may not weigh evidence or make credibility determinations, and any justifiable inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *Id.* at 255.  The nonmovant's evidence need only be such that a "jury might return a verdict in his favor." *Id.* at 257.

### B.   *Exhaustion of Administrative Remedies*

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. 632, 638 (2016) (quoting 42 U.S.C. § 1997e(a)). "[T]he PLRA's exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).  "[P]roper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court." *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006).

When the events alleged in the Complaint took place in 2019 there were three formal levels of administrative review in the CDCR.[2]  *See* Cal. Code Regs., tit. 15 § 3084.5.  An

---

[2]  The citations to the California Code of Regulations in this Order are to the code sections in effect in 2019.  *See Wimberly v. Cuevas*, No. 19cv8316-SI, 2021 WL 879881, at *4 n.1 (N.D. Cal. Mar. 9, 2021) (unpublished) ("On March 25, 2020, and effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487.").

inmate began the process by submitting, within thirty days of the adverse action, a CDCR form 602-inmate appeal describing the adverse action challenged.  Cal. Code Regs., tit. 15 § 3084.8(b)(1).  If the inmate was not satisfied with the first level response, the inmate could have submitted an appeal at the second level of review.  *Id.*  If the inmate was not satisfied with the second level response, the inmate could have submitted an appeal to the Office of Appeals for a third level of review by the Chief of the Office of Appeals in Sacramento, which completed the exhaustion process.  *Id.*

### 1. Allegations in the Complaint Regarding Exhaustion

Plaintiff alleges in the Complaint he was attacked by Inmate Carr on his way to breakfast at roughly 5:45 a.m. on December 5, 2019, and immediately returned to his cell without breakfast to fill out a 602-inmate grievance.  ECF No. 1 at 6.  He attaches a copy of that grievance to the Complaint, which states:

> December 4, 2019, at approx. 7:15 p.m. I was attacked by an inmate while receiving my legal in front of c/o Fiero [sic] c/o Ogle, and c/o Wollenson [sic].  They told the inmate to walk away after he punched me in the face.  The next morning the same inmate still in the building try to attack me at morning chow, forcing me to defend myself.  The c/o's should have separated me from my attacker but instead jeopardized my safety by allowing him to stay in the building and attack me.

*Id.* at 22–23.

In the "Action requested" section of the grievance, Plaintiff stated: "Requesting compensation for injuries and reprimanding officers for jeopardizing safety."  *Id.* at 22. Plaintiff alleges that about a week later he was interviewed about the December 4, 2019, incident and told the interviewing officer "how the on duty officers witnessed the attack and failed to properly respond to the attack, which led to another attack the morning of December 5."  *Id.* at 7–8.  Inmate Alexander told Plaintiff he reported to prison authorities "what he'd witnessed; inmate Carr walk up to plaintiff and punch him."  *Id.* at 8.

/ / /

/ / /

Plaintiff received a second level response to his grievance on December 24, 2019, which is attached to the Complaint. *Id.* at 20–21. It did not mention his request for monetary compensation and stated: "A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review your appeal is: Pending review by ISU as an Allegation Inquiry." *Id.* at 20. Under the heading "Allegation Inquiry," it states: "Your appeal has been referred by the hiring authority to a trained investigator to determine whether the evidence warrants an investigation or inquiry. After the determination has been made your complaint will be processed accordingly and you will be notified of the outcome." *Id.* at 21. It states that his request for the Defendants to be reprimanded was "beyond the scope of the staff complaint process" and that "allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process." *Id.* Plaintiff alleges he did not understand what "further relief" he could possibly seek and that the second level appeal response constituted an attempt to confuse, discourage, and obstruct his attempt to exhaust his administrative remedies. *Id.* at 9–10. The second level response concluded: "If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's/Third Level of Review. Once a decision has been rendered at the Third Level, administrative remedies will be considered exhausted." *Id.* at 21.

In sum, the second level response: (1) ignored Plaintiff's request for compensation, (2) indicated that his request for disciplinary action against the Defendants was outside the scope of the grievance process but was currently being investigated and Plaintiff would be notified of the result, and (3) informed Plaintiff that exhaustion of administrative remedies would not be complete unless and until he advanced to the third and final level of review.

/ / /

/ / /

/ / /

/ / /

2. *Defendants Have Met Their Burden of Demonstrating Failure to Exhaust*

Howard E. Mosely, the Associate Director of the Office of Appeals ("OOA") for the California Department of Corrections and Rehabilitation ("CDCR"), states that he is responsible for administering the CDCR's grievance and appeals process for all inmates, and that a decision by the OOA constitutes the final level of review.  Declaration of Howard E. Mosely in Support of Defendants' Motion for Summary Judgment ("Mosely Decl.," ECF No. 29-5) ¶¶ 1, 5.  According to Mosely, a search of the OOA records failed to identify a final level of review submitted by Plaintiff with respect to the allegations presented in this action, but the search did return four other inmate appeals by Plaintiff taken to the third and final level of appeal, with one occurring in 2017 and three in 2018.  *Id*. ¶¶ 8–9; *id.* at 6.

Defendants point out that the second level response attached to the Complaint states: "If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's/Third Level of Review.  Once a decision has been rendered at the Third Level, administrative remedies will be considered exhausted."  ECF No. 1 at 21.  The second level response also states: "The appellant alleges custody staff at the Richard J. Donovan Correctional Facility (RJDCF) witnessed an inmate batter you and failed to act and failed to protect you from a future attack by the same inmate," and therefore concerns the claim presented in the Complaint.  *Id*. at 20.  Defendants argue that Plaintiff is familiar with the appeals process as he recently took four prior inmate appeals to the third and final level of review.  ECF No. 29-1 at 14; Mosely Decl. at 6.

Defendants have carried their burden on summary judgment by coming forward with evidence showing there is no genuine issue of material fact in dispute that Plaintiff could have, but never, filed a third level appeal of his 602-inmate grievance presenting the claim raised in his Complaint, despite being informed that he needed to do so to exhaust administrative remedies and despite having done so with respect to at least four prior inmate appeals. *See Sapp v. Kimbrell*, 623 F.3d 813, 827 (9th Cir. 2010) ("[Plaintiff] could

have pursued [his] grievance through the full administrative appeal process.  Nothing in the record indicates that these apparently straight-forward procedures 'trip up' ordinary inmates.  To the contrary, [Plaintiff] has proven his own ability to navigate them, as he successfully exhausted [another grievance] around the same time as he pursued his appeals about [this grievance].").

### 3. Plaintiff Has Failed to Show Administrative Remedies Were Unavailable

Once a defendant meets the burden of showing "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy . . . the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).  Inmates are not required to exhaust administrative remedies when circumstances render administrative remedies "effectively unavailable." *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010).  Any justifiable inferences drawn from the facts in the record in this regard will be viewed in the light most favorable to Plaintiff.  *Anderson*, 477 U.S. at 247–50.

Plaintiff alleges he should be excused from failing to appeal to the third and final level of appeal because the second level response contained "confusing and dead end instructions that would ultimately lead to nowhere."  ECF No. 1 at 10.  He contends there was nothing left to appeal because (1) his request for compensation was not addressed in the second level of appeal response; (2) the second-level response stated that the appeal process was not available for his request that the Defendants be disciplined; and (3) the second-level response confused the issue by stating: "Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process." *Id*. at 9–10, 21.

There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross*, 578 U.S. at 643.  They arise when: (1) the exhaustion procedure "operates as a simple dead end – with officers

unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the prison's exhaustion scheme is "so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

Because Plaintiff did not sign his Complaint under penalty of perjury the Court is unable to consider the statements contained therein as evidence in opposition to the summary judgment motion. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) ("[B]ecause Jones is pro se, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where Jones attested under penalty of perjury that the contents of the motions or pleadings are true and correct."). However, even assuming Plaintiff would verify his Complaint if given the opportunity to do so, it is clear he was still required to submit a final level appeal of his 602-inmate grievance to exhaust his available administrative remedies despite his confusion.

The Ninth Circuit has held that exhaustion is not required "when circumstances render administrative remedies 'effectively unavailable,'" such as "improperly screening a prisoner's grievances." *Sapp*, 623 F.3d at 822–23 (quoting *Nunez*, 591 F.3d at 1226). However, in that situation, "the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id*. at 823–24. Plaintiff's anticipation that filing a third level appeal of his inmate grievance would have been a dead end, even if reasonable, does not excuse his failure to file at that level because he has not shown the second level response was inconsistent with or unsupported by the prison regulations. *Id*.; *see also Marella v. Terhune*, 568 F.3d 1024, 1028 (9th Cir. 2009) ("If a prisoner had full opportunity and

ability to file a grievance timely, but failed to do so, he has not properly exhausted his administrative remedies." (citing *Woodford*, 548 U.S. at 88)).  Plaintiff's alleged confusion about what remedies remained available to him after the second level denial of his grievance—that is, his contention there was nothing to appeal because his request for compensation was not addressed at the second level of appeal and the appeal process was not available for his request that the Defendants be disciplined—does not excuse his failure to exhaust because "prisoners are obligated to navigate all a prison's administrative review process 'regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible.'"  *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001)).  Thus, Plaintiff was required to file at the third level because it was "available" to him.  *See Booth*, 532 U.S. at 737 (noting that "available" means "capable of use for the accomplishment of a purpose" and "that which is accessible or may be obtained." (internal quotation omitted)); *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) ("To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" (quoting *Albino*, 747 F.3d at 1171)).

In sum, the uncontroverted evidence establishes that Plaintiff did not file a third level appeal of the denial of his 602-inmate grievance containing the allegations against the Defendants upon which the claim in the Complaint is based, despite being instructed to do so to exhaust administrative remedies, having had an opportunity to do so, and having done so with prior appeals of inmate grievances.  This establishes a lack of exhaustion of available administrative remedies.  Defendants are entitled to summary judgment because Plaintiff has "failed to establish the existence of an element essential to [his] case." *Catrett*, 477 U.S. at 322; *Rhodes*, 621 F.3d at 1004 ("[T]he PLRA's exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims.").

The Court **GRANTS** Defendants' Motion for Summary Judgment based on Plaintiff's failure to exhaust available administrative remedies.

/ / /

/ / /

### C.    Eighth Amendment Claim

Defendants contend in the alternative that even if Plaintiff is not precluded from bringing his Eighth Amendment failure to protect claim due to a failure to exhaust administrative remedies, the uncontroverted evidence establishes that Defendant was neither aware of nor deliberately indifferent to a risk of assault on Plaintiff by Inmate Carr. ECF No. 29-1 at 15–17.  Defendants argue that neither the allegations in the Complaint nor the uncontroverted evidence support a finding that they had any advance notice that Inmate Carr would attack Plaintiff on the first occasion, and, because they were not the first correctional officers to respond to that first attack, they did not have a responsibility to sound an alarm or investigate whether the two inmates presented a further danger to each other.  *Id*.  As to the second attack, they contend that (1) Plaintiff did not complain to anyone that he feared for his safety after the first attack or report either attack, but merely returned to his cell to prepare a 602-inmate grievance seeking compensation for the attacks and requesting Defendants be disciplined; (2) Plaintiff has presented no evidence that the second attack even occurred; and (3) he has not come forward with evidence to contradict Defendants' evidence that Plaintiff and Inmate Carr were interviewed within two weeks about any mutual hostility, and both inmates signed a memorandum stating they did not consider each other enemies and could remain housed together without further incident.  *Id*.

"The Eighth Amendment imposes a duty on prison officials to protect inmates from violence at the hands of other inmates."  *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  There are objective and subjective prongs to a failure to protect claim.  "First, objectively viewed, the prison official's act or omission must cause 'a substantial risk of serious harm.'  Second, the official must be subjectively aware of that risk and act with 'deliberate indifference to inmate health or safety.'"  *Id*. (quoting *Farmer*, 511 U.S. at 834, 839–40).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he most also draw that inference."  *Farmer*, 511 U.S. at 837.

Deliberate indifference can be established from an "inference from circumstantial evidence" or "from the very fact that the risk was obvious." *Id*. at 842.

Defendants each present their own sworn declaration. Defendant Fierro states that he did not observe Inmate Carr strike Plaintiff on December 4, 2019, and that he had no reason to believe Plaintiff faced any danger of physical attack by Inmate Carr. Declaration of C. Fierro in Support of Defendants' Motion for Summary Judgment ("Fierro Decl.," ECF No. 29-3) ¶¶ 4-5. He states that because he did not witness that attack, he had no obligation to sound an alarm or investigate whether Plaintiff was in danger of further attack. *Id*. ¶ 6. Moreover, when he observed Plaintiff after the attack, Plaintiff did not appear to be distraught or injured, and Plaintiff never indicated he faced further danger from Inmate Carr. *Id*. ¶¶ 9-10. Defendant Fierro further states that he was not aware Plaintiff was involved in another altercation with Inmate Carr on December 5, 2019, that he was not aware Plaintiff faced such a danger, and that if he had, he would have acted as he has been trained to act to prevent the second assault. *Id*. ¶¶ 11–12. Defendant Wollesen makes essentially the same statements in his sworn declaration, adding that he had a conversation with Plaintiff following the first assault in which he asked Plaintiff if he wanted medical attention, which he declined. Declaration of J. Wollesen in Support of Defendants' Motion for Summary Judgment ("Wollesen Decl.," ECF No. 29-4) ¶¶ 4–12.

Defendants also present the declaration of Giam Nguyen, a Supervising Deputy California Attorney General, who attaches a copy of a memorandum taken from Plaintiff's prison file. Declaration of Giam Nguyen in Support of Defendants' Motion for Summary Judgment ("Nguyen Decl.," ECF No. 29-6) ¶ 3. That document, which is signed by Plaintiff and Inmate Carr, indicates that on December 17, 2019, Plaintiff and Inmate Carr were interviewed and both stated they do not consider each other enemies, and that they can remain housed on Facility A without further incident. *Id*. at 4.

Accordingly, Defendants have come forward with evidence that they were unaware of facts from which an inference could have been drawn that Plaintiff faced a substantial risk of Inmate Carr's first attack, which Plaintiff himself states was unexpected and

inexplicable.  They have also presented evidence that they were unaware of any risk of further attack, and were under no obligation to intervene, because Plaintiff never informed anyone that he feared further attack by Inmate Carr.  Thus, they have come forward with evidence that no Eighth Amendment violation occurred as a result of any act or omission on their part.  *See Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he most also draw that inference."); *Adickes*, 398 U.S. at 157 (noting moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact.").  To avoid summary judgment, Plaintiff "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

Plaintiff has come forward with no facts or evidence whatsoever.  As noted, he has not filed an opposition to the Defendants' Motion and his Complaint is not verified.  Even if he were allowed an opportunity to verify his Complaint, the allegations therein, if proven true and to the extent they are within his personal knowledge, merely establish that Defendants were on duty in the dayroom when Plaintiff was unexpectedly assaulted by Inmate Carr as Officer Ogle escorted Plaintiff to sign for legal mail.  ECF No. 1 at 4.  Plaintiff alleges Defendants did not react in any way, and that Inmate Carr walked away and sat at a nearby bench after Officer Ogle ordered him to walk away.  *Id*.  Plaintiff then looked at Defendants and asked them: "Really?, you're just gonna let that man punch me in my face?", and Defendant Wollesen "laughed and stated, 'Carr's just crazy, man.'" *Id*. at 4–5.  Plaintiff does not contradict Defendants' evidence that they were not the officers who responded to the attack and were therefore not responsible for determining whether Plaintiff faced a danger of further assault by Inmate Carr.  Nor does he contradict Defendants' testimony he never indicated to them that he was in danger of being assaulted by Inmate Carr after the first assault.  In fact, he does not allege that he informed anyone of such a risk or that anyone concluded he faced such a risk.  *See Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause of commendation, cannot" be an Eighth Amendment violation.).

1    Although the failure of an inmate to inform a prison official of a specific threat is
2    not dispositive of the question of whether the official acted with deliberate indifference to
3    the inmate's safety, where the record contains no other evidence that Defendants knew of
4    facts which would support an inference of a substantial risk of further assault, or actually
5    drew such an inference, deliberate indifference is not established.  *Labatad v. Corrs. Corp.*
6    *of America*, 714 F.3d 1155, 1160–61 (9th Cir. 2013).  To the extent Plaintiff relies on a
7    general contention that because Inmate Carr unexpectedly and for no reason assaulted him
8    on one occasion he might do so again, it is belied by Plaintiff's failure to contradict
9    Defendants' evidence that he and Inmate Carr signed a compatibility report about twelve
10    days later.   In any case, even if Plaintiff were allowed to verify his Complaint, his
11    allegations do not overcome the evidence presented by Defendants that they were not in
12    possession of facts from which they could have, or did, draw an inference that Plaintiff was
13    in danger of a second assault by Inmate Carr, or that they could have or should have taken
14    any precautions to prevent the second sudden and unexpected assault, because deliberate
15    indifference requires more than a mere suspicion of danger.  *See Berg v. Kincheloe*, 794
16    F.2d 457, 459 (9th Cir. 1986) ("The standard does not require that the guard or officer
17    believe to a moral certainty that one inmate intends to attack another at a given place at a
18    given time certain before that officer is obligated to take steps to present such an assault.
19    But on the other hand, he must have more than a mere suspicion that an attack will occur.").
20    Although deliberate indifference can be established from an "inference from
21    circumstantial evidence" or "from the very fact that the risk was obvious," *Farmer*, 511
22    U.S. at 842, the uncontroverted evidence shows that Defendants were merely on duty in
23    the dayroom when Inmate Carr unexpectedly and for no reason assaulted Plaintiff, and that
24    Plaintiff never informed Defendants or anyone else he felt a need for protection from
25    Inmate Carr.  Thus, there is insufficient evidence the Defendants were in possession of
26    facts from which an inference could be drawn that Plaintiff was in danger of further assault
27    by Inmate Carr, that they actually drew such an inference, or that such a possibility was so
28    obvious they should have drawn such an inference.

Defendants have met their burden of showing summary judgment is proper by "showing the absence of a genuine issue as to [a] material fact": whether they were deliberately indifferent to a substantial risk to Plaintiff's safety. *Adickes*, 398 U.S. at 157. Entry of summary judgment in favor of Defendants on Plaintiff's Eighth Amendment failure to protect claim is appropriate because Plaintiff has not "set forth specific facts showing that there is a genuine issue for trial" with respect to deliberate indifference. *Anderson*, 477 U.S. at 256–57 (holding that the nonmovant's evidence need only be such that a "jury might return a verdict in his favor.").

## IV.   Conclusion and Orders

Based on the foregoing, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 29) is **GRANTED**.  The Clerk of Court is directed to enter judgment in favor of Defendants Fierro and Wollesen.  As this Order concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated:  February 16, 2023

Hon. Janis L. Sammartino
United States District Judge

20cv1254-JLS (AHG)